**In the Interest of Julie WALKER.**[1]

No. CS91–03502.

Family Court of Delaware.

Submitted: Dec. 23, 2005.
Decided: Feb. 28, 2006.

---

1. Pseudonyms are used to protect the privacy of the parties.

James S. Reichert, Deputy Attorney General, Department of Justice, Georgetown, DE, for the Division of Family Services.

Jennifer S. Donahue, Georgetown, DE, for mother.

William B. Wilgus, Georgetown, DE, for father.

Kristin S. Gibbons, Georgetown, DE, for the Court Appointed Special Advocate.

## OPINION

MILLMAN, J.

At the conclusion of the Review Hearing held in this case on November 15, 2005, a

disagreement arose among the parties as to the date Julie came into foster care. This issue is of significance because 42 USC 675(5)(C) requires that every child is entitled to a permanency hearing no later than 12 months after entering care.[2]

Based on the facts of this case, I find that Julie came into care on February 8, 2004, and she is now entitled to a permanency hearing pursuant to § 675(5)(C). I further find, under the facts of this case, that Julie did not have a trial home visit and, even assuming that she did have a trial home visit, such visit did not toll the requirement that a permanency hearing be held within 12 months after entering care.

### Facts

On December 10, 2003, legal custody of Julie was granted to the Division of Family Services ("the Division"). On that date, the Division removed Julie from the home of John Walker ("father") and placed her in the home of Meredith Murray ("grandmother"). At that time, and for some time prior to Julie's placement in grandmother's home, Darla Murray ("mother") was residing in grandmother's home as well.

Julie and mother continued to reside in grandmother's home until mid-December 2004, when mother left the residence to live with her then paramour. Julie remained at her grandmother's home until on or about May 17, 2005, when grandmother requested that the Division remove Julie. Since May 17, 2005, Julie has not resided in the home of a relative.

### Date of Entry into Care

42 USC 675(5)(F) states "a child shall be considered to have entered foster care on the earlier of (i) the date of the first judicial finding that a child has been

2.  42 USC 675(5)(C) states in pertinent part: "With respect to each such child, procedural safeguards will be applied, among other things, to assure each child in foster care under the supervision of the State of a permanency hearing to be held … no later than 12 months after the date the child is considered to have entered foster care…."

subjected to child abuse or neglect, or (ii) the date that is 60 days after the date on which the child is removed from the home." While § 675(5)(F) does not define foster care, federal regulations do. 45 C.F.R. § 1355.20(a) defines foster care to be:

> 24–hour substitute care of children placed away from their parents or guardians and for whom the State agency has placement and care responsibility. This includes, but is not limited to, placements in foster family homes, foster homes of relatives, group homes, emergency shelters, residential facilities, child care institutions, and preadoptive homes. A child is in foster care in accordance with this definition regardless of whether the foster care facility is licensed and payments are made by the State or local agency for the care of the child, whether adoption subsidy payments are being made prior to the finalization of an adoption, or whether there is Federal matching of any payments that are made.

This case is somewhat unusual in the sense that this child was removed from the home of one parent and placed in a home where the other parent was residing. However, it is clear that Julie was not placed in the grandmother's home because mother was residing there. It is undisputed that Julie was removed from father's residence and placed in grandmother's home because the Division believed grandmother could provide a stable and safe environment for Julie while mother and father, if they so chose, addressed their respective issues that prohibited Julie from being in either parent's physical custody.

At both the Preliminary Protective Hearing on December 23, 2003, and the Adjudicatory Hearing on February 24, 2004, mother admitted Julie was dependent in her care based on her history of substance abuse and her lack of independent housing. Father admitted at the Preliminary Protective Hearing that Julie would be dependent in his care because of the pending criminal charges against the stepmother in which Julie was the alleged victim, and later at the Adjudicatory Hearing, based on the ground of parent/child conflict. Although mother was physically present at grandmother's residence, where the Division placed Julie, I am satisfied Julie was away from her parents and in care as defined by federal regulation. The decision as to where Julie was to reside and the responsibility for her care rested solely with the Division. Based on the language of § 675(5)(F) and 45 C.F.R. 1355.20(a), I find that Julie first entered foster care on February 8, 2004, 60 days after removal from father's home on December 10, 2003.[3]

### Trial Home Visit

█ As the Division points out in its memorandum, the date on which Julie entered care is not seriously contested.[4] Both the Division and mother argue that the placement of Julie at grandmother's house, where mother also lived, was a trial home visit.[5] The Division and mother further contend that this trial home visit tolls the clock on the requirement of § 675(5)(C) that Julie have a permanency hearing 12 months after coming into care. Based on the facts of this case, Julie did not have a trial home visit with her mother.

---

**3.** The Adjudicatory Hearing was held on February 24, 2004.

**4.** The Division's Memorandum dated December 23, 2005 at page 2.

**5.** 45 C.F.R. § 1356.21(e).

While federal regulations do permit trial home visits, the regulations do not define this term.[6] Federal regulations do state, "[a] trial home visit may not exceed six months in duration unless a Court orders a longer trial home visit ..."[7] Moreover, "[a] trial home visit is intended to be a short-term option in preparation for returning the child home permanently."[8]

This Court held in its May 24, 2005 order that Julie had entered foster care on May 17, 2005.[9] At the time the Court entered this Order, it was under the mistaken belief that Julie's placement at grandmother's home, where mother resided, was a trial home placement under federal regulations. The Court misinterpreted the regulations and I now hold that my finding that Julie was on a trial home visit with her mother was wrong.

As previously stated, Julie, at the time of her removal from her father's home, was placed in her grandmother's home where mother happened to reside. Julie was not placed there because that was where mother lived. Both the Division and mother argue that a trial home visit for Julie with mother began on February 8, 2004, the day Julie came into care. At that time, however, there had been no finding that Julie was determined to be dependent in mother's care nor had a case plan for mother been developed. To adopt the Division and mother's position that trial home visits may commence before the adjudicatory hearing is held and a case plan developed, reduces both the hearing and the development of a case plan to insignificant acts. The adjudicatory hearing provides the forum to determine if a child is dependent, neglected or abused in his or her parent's care. If the parent admits or is found to be unable to provide adequate care for his or her child or to have neglected or abused the child, the

> [f]indings of facts describing the parent's abuse or neglect [or inability to provide adequate care] comprise a critically important record of the actual [dependency] abuse or neglect. The findings should help define the terms of the agency case plan, set a baseline against which progress is measured during review hearings.... [10]

The court's findings at the adjudication hearing lay a foundation for subsequent planning. Findings identify the problems that must be corrected to allow the child to be safely returned home or to be safely maintained in the home. The findings provide direction to the agency for devising a service plan for the family.... [11]

The Division and mother's argument that a trial home visit may begin prior to a finding of dependency is without merit. The case plan is a significant part of the reunification process. "The case plan identifies the goals, tasks, and strategies to obtain a safe and secure home for the child."[12] The case plan also identifies:

**6.** 65 F.R. 4056.

**7.** 45 C.F.R. § 1356.21(e).

**8.** 65 F.R. 4056.

**9.** *In the interest of Julie Walker*, De. Fam. Ct., File No. CS91–03502, May 17, 2005 (Millman, J.).

**10.** The Children's Bureau: Guidelines for Public Policy and State Legislation Governing Permanency for Children, p. IV–14 (1999).

**11.** National Council of Juvenile and Family Court Judges Resource Guidelines: Improving Court Practice in Child Abuse and Neglect Cases, p. 49 (1995).

**12.** The Children's Bureau: Guidelines for Public Policy and State Legislation Governing Permanency for Children, p. IV–16 (1999).

problems to be resolved before the court's involvement ends; changes in parental behavior that must be achieved; services to be provided to help achieve these changes; and the deadlines and respective responsibilities of each party in providing services in achieving case plan goals.[13]

Likewise, to permit trial home visits prior to the development of a case plan outlining the services necessary to assist a parent to correct the problem or problems that caused his or her child to be placed into care, would be imprudent. This argument is without merit.

### Permanency Hearing

■ Although I have held that Julie did not have a trial home visit, the Division and mother contended in their respective memoranda that the length of time incurred on a trial home visit is not included in calculating the 12–month period for a permanency hearing under § 675(5)(C).[14] As the Division and mother argue that trial home visits toll the 12–month time frame for conducting a permanency hearing and the Court Appointed Special Advocate ("CASA") argues no tolling is authorized, I will address this issue.

Trial home visits do toll the time requirements for the filing of a petition for the terminating of parental rights.[15] The consequences of § 675(5)(E) are severe—

they could lead to the severance of the parents' parental rights to a child. Our courts have long held that:

> [T]he parental right is a sacred one.... Fewer rights are more sacred than those which derive from the parent-child relationship. A society which arrogates to itself the power to intervene and disrupt that relationship can do so only for the most compelling reasons.... [16]

There is both statutory and regulatory language authorizing the tolling of the 15 months out of 22 months statutory requirement during a trial home visit.[17] The tolling of the 15 out of 22–month requirement during trial home visits is both reasonable and justified given the fact that parental rights could ultimately be severed.

However, there is no such statutory or regulatory exemption with regard to the permanency hearing.

> The requirement to conduct permanency hearings no later than 12 months from when a child enters foster care is statutory. One of the main purposes of [the Adoption and Safe Families Act] was to encourage States and parents to achieve permanency for children in a more timely manner.[18]

The permanency hearing "represents a deadline for the court to determine the final plan in a neglect or abuse [or dependency] case that will move the child out of

13. National Council of Juvenile and Family Court Judges Resource Guidelines: Improving Court Practice in Child Abuse and Neglect Cases, p. 59 (1995).

14. 42 USC 675(5)(C).

15. 42 USC 675(5)(E) states in pertinent part: "In the case of a child who has been in foster care under the responsibility of the State for 15 of the most recent 22 months ... the State shall file a petition to terminate the parental rights of the child's parents ... unless (i) at the option of the State, the child is being cared for by a relative; (ii) a State agency has

documented in the case plan (which shall be available for court review) a compelling reason for determining that filing such a petition would not be in the best interests of the child...." See, also, 45 C.F.R. 1356.21(i)(1)(i)(C).

16. In the Matter of Burns, 519 A.2d 638 at 645 (Del.1986). Inside citation omitted.

17. 42 USC 675(5)(E) and 45 C.F.R. § 1356.21(i)(1)(i)(C).

18. 65 F.R. 4035.

temporary foster care and into a safe, nurturing and permanent home."[19]

At the hearing, the Court must adopt a plan that: 1) returns the child to the parents in a timeframe consistent with the parents' efforts toward reunification and the child's developmental needs,[20] 2) orders a termination of parental rights action be filed, 3) orders a guardianship be filed permitting placement with a relative, foster parent or other non-relative, or 4) provide another specified permanent living arrangement.[21]

With no statutory exception from the 12–month requirement applicable, Julie was entitled to a permanency hearing on or before February 8, 2005.

## Conclusion

Julie Walker came into foster care on February 8, 2004, and did not have a trial home visit with mother. A trial home visit does not toll the requirement that a child is entitled to a permanency hearing no later than 12 months after coming into care.

---

**19.** National Council of Juvenile and Family Court Judges Resource Guidelines: Improving Court Practice in Child Abuse and Neglect Cases, p. 18 (1995).

**20.** 65 F.R. 4035 states in part: "A major purpose of ASHA is to promote timely permanency planning. We recognize, however, that there are situations when reunification cannot occur within 12 months but it is not appropriate to abandon it as the permanency plan at the permanency hearing. It is acceptable to extend reunification efforts past the permanency hearing if the parent(s) has been diligently working toward reunification and the State and court expect that reunification can occur within a time frame that is consistent with the child's developmental needs."

**21.** 42 USC 675(5)(C).